**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| MERCEDES TERRELL; JESSICA 'JESSE' GOLDEN; SARA UNDERWOOD; JESSICA BURCIAGA; IRINA VORONINA; BROOKE MARRIN a/k/a BROOKE BANX; and ROSA ACOSTA,<br><br>                Plaintiffs,<br><br>        - against -<br><br>CHICAS ENTERTAINMENT, LLC d/b/a CHICAS CABARET<br><br>              Defendant. | Case No. _____<br><br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiffs, MERCEDES TERRELL; JESSICA 'JESSE' GOLDEN; SARA UNDERWOOD; JESSICA BURCIAGA; IRINA VORONINA; BROOKE MARRIN a/k/a BROOKE BANX; and ROSA ACOSTA, ("Plaintiffs"), by and through their undersigned counsel, as and for their Complaint against Defendant CHICAS ENTERTAINMENT, LLC d/b/a CHICAS CABARET ("Defendant" or "Chicas"), respectfully allege as follows:

**BACKGROUND**

1.    This is an action for damages and injunctive relief relating to Defendant's misappropriation and unauthorized publication of images of Plaintiffs, who are world-renowned professional models, in order to promote its strip clubs, Chicas (collectively "Chicas" or "Defendant").

2.    As detailed below, Defendant's unauthorized use of Plaintiffs' images, photos, and likenesses (collectively, "Images") constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B), which prohibits false or misleading use of a

- 1 -

person's image for purposes of advertising; b) violation of violation of Plaintiff's right to privacy, which protects a person's right to privacy and publicity; c) defamation, and d) supplants various common law torts.

3.      In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seeks an Order from this Court permanently enjoining Defendant from using her Image to promote Chicas, via any medium.

**JURISDICTION & VENUE**

4.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs has stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1)(A) and (B).  This Court also has subject matter jurisdiction the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

5.      As set forth immediately below, Plaintiffs MERCEDES TERRELL; JESSICA 'JESSE' GOLDEN; SARA UNDERWOOD; JESSICA BURCIAGA; IRINA VORONINA; BROOKE MARRIN a/k/a BROOKE BANX; and ROSA ACOSTA, are, and at all times relevant to this action have been, professional models.

6.      According   to   publicly   available   records,   Defendant   CHICAS ENTERTAINMENT, LLC d/b/a CHICAS CABARET is a limited liability company organized and existing pursuant to the laws of the State of Texas doing business as a strip club in Houston, Harris County, Texas under the name Chicas Gentlemen's Club at 9924 North Freeway, Houston, Texas 77037.

7.      Venue is proper in the United States District Court for the Southern District of Texas because Houston, Harris County, Texas is the principal place of business for Defendant.

8.      All parties have minimum contacts with Harris County, a significant portion of

the alleged causes of action arose and accrued in Harris County, Texas, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Harris County.

## PARTIES

### *Plaintiffs*

9.     Plaintiff MERCEDES TERRELL is an individual residing in the State of Nevada.

10.     Plaintiff JESSICA 'JESSE' GOLDEN is an individual residing in the State of California.

11.     Plaintiff SARA UNDERWOOD is an individual residing in the State of Oregon.

12.     Plaintiff JESSICA BURCIAGA is an individual residing in Atlanta, Georgia.

13.     Plaintiff IRINA VORONINA is an individual residing in the State of California.

14.     Plaintiff BROOKE MARRIN a/k/a BROOKE BANX is an individual residing in the state of Texas.

15.     Plaintiff ROSA ACOSTA is an individual residing in the state of California.

### *Defendant*

16.     According to publicly available records, Defendant CHICAS ENTERTAINMENT, LLC d/b/a CHICAS CABARET is a limited liability company organized and existing pursuant to the laws of the State of Texas doing business as a strip club in Houston, Texas under the name Chicas at 9924 North Freeway, Houston, Harris County, Texas 77037.  It may be served with process by serving its registered agent, Robert B. Harrison, Jr., at 9924 North Freeway, Houston, Harris County, Texas 77037.

## FACTUAL ALLEGATIONS

17.     As set forth immediately below, Plaintiffs are well-known professional models

who earn their livelihood modeling and selling their identity, image and likeness (collectively "Images") to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services.

18.     Chicas's misappropriated Plaintiffs' images and likenesses and the repeatedly published of them in a defamatory manner.  Chicas violations are ongoing and constitute a continuing tort producing a continuous injury to Plaintiffs.

19.     There is no question that Chicas or parties acting on its behalf misappropriated the images and likenesses of the Plaintiffs for the purpose of using the value of the Plaintiffs' Images for the value associated with them.  Plaintiffs are internationally known for gracing the covers of countless mainstream publications in addition to having careers in television and film.  All of the Plaintiffs are easily identifiable at a glance.  Moreover, Chicas undoubtedly received a benefit from its unauthorized use of the Plaintiffs' Images.  The Plaintiffs have suffered damages as a result of Chicas conduct.

20.     Mercedes Terrell is an American model and spokesmodel. Ms. Terrell is a contract model who travels and works with Monster Energy Supercross. Ms. Terrell also appears with The Superbike Races special events and also with Moto GP Championship races. Ms. Terrell is probably best known and has a huge social media following as the main Ring Girls for Bellator MMA fighting. Ms. Terrell has featured in a number of magazines and has appeared on the cover of *Wheels and Heels* magazine, *Dub Magazine, Beer magazine, Girls Lowrider* and many more.

21.     Chicas misappropriated Ms. Terrell's Image and placed it on social media posts for Chicas, a sexually-oriented business, beginning on or around October 28, 2016, for the club's "Halloween Party."  The Image depicts Ms. Terrell in a red devil costume and red thigh-high

boots promoting the event and the strip club.  The image of Ms. Terrell was deliberately positioned to imply that she was a stripper working at the club or that she endorsed the club and is attached here as Exhibit A.  The image was used without the permission of Ms. Terrell and is defamatory on its face.  The image was circulated via social media by Chicas.

22.     Jessica Golden (Jesse Golden) is a successful model and businesswoman. She became a supermodel with high profile clients that included Abercrombie & Fitch, Victoria Secret, Lucy Sport, Coca-Cola, GAP, and Nike. She has graced the covers of magazines like New York Times, Fitness, New Port Beach, Yoga International, and many others. Jesse shares her secrets on her own blog and also writes for many other magazines and sites. She's currently becoming a Holistic Health Practitioner and is a certified Hatha yoga teacher. She has her own fitness and yoga brand and products. Working for many notable fashion brands, dozens of commercials, television and film; Jesse continues to expand her career through life experiences.

23.     Chicas misappropriated Ms. Golden's Image and placed it on social media posts for Chicas, a sexually-oriented business, beginning on or around October 28, 2016, for the club's "Halloween Party."  The Image depicts Ms. Golden in a black witch's costume and fishnet stockings promoting the event and the strip club.  The image of Ms. Golden was deliberately positioned to imply that she was a stripper working at the club or that she endorsed the club and is attached here as Exhibit A.  The image was used without the permission of Ms. Golden and is defamatory on its face.  The image was circulated via social media by Chicas.

24.     Sara Underwood first appeared in *Playboy* in the pictorial "The Girls of the Pac 10" in the October 2005 issue (she also graced the cover). Ms. Underwood was the Playmate of the Month in the July, 2006 issue of the famous men's magazine. She was named Playmate of the Year in 2007. She has been featured in many *Playboy* videos, and not only has appeared as

herself in the films *The House Bunny* (2008) and *Miss March* (2009) but also on episodes of such reality TV series as Kendra (2009), *The Girls Next Door* (2005) and *Bridget's Sexiest Beaches* (2009). Ms. Underwood has also worked on television as a continuity announcer for the Blackbelt TV cable network and co-hosted hundreds of episodes of G4's "Attack of the Show" for a couple of years. She has over 5 million social media followers.

25.     Chicas misappropriated Ms. Underwood's Image and placed it on social media posts for Chicas, a sexually oriented business, beginning on or about October 28, 2017, for the club's "Halloween Party" The Image depicts Ms. Underwood in a military style half shirt and coordinating accessories promoting the event and the strip club. The Image of Ms. Underwood was deliberately positioned on the promotional materials to imply that she was a stripper working at the club or that she endorsed the club and is attached here as Exhibit B.  The image was used without the permission of Ms. Underwood and is defamatory on its face.  The image was circulated via social media by Chicas.

26.     Irina Voronina is an international model and actress. After becoming *Playboy's* Miss January 2001, she represented international brands including SKYY Vodka, Miller Lite, Michelob Ultra, Bacardi, and Sisley & Detour to name a few. She has millions of visual impressions around the globe via the covers and pages of worldwide magazines such as *FHM, Maxim, Playboy* (in 20 countries), *Max* (Italy), *Ocean, Shape, 944, Knockout, Q* (UK), *People* (Australia), and most recently *Kandy, Rukus, Vape* and *Browz* magazines. In 2008, Ms. Voronina was named St. Pauli Girl spokes model and completed a 12-month PR tour across America. She became the first ever St. Pauli Girl to ring the NYSE closing bell representing Constellation Brands.  In 2013, Ms. Voronina was named *Kandy Magazine's* Model of the Year as a result of her fans downloading the highest number of digital issues that year. She loves

connecting with her fans and stays active daily across all social media outlets for her 4+ million followers on Facebook, Instagram, Twitter and YouTube. (Facebook - 3.5 million, Instagram 437K, Twitter 105K) Ms. Voronina also got her first big screen break in "Reno 911!: The movie.". Her credits include a series regular role in the fully improvised sitcom "Svetlana" for HD Net, the first ever live action show on Adult Swim Network "Saul of the Mole Men," guest star appearance on Nickelodeon's "iCarly," Comedy Central's "Reno 911!", and feature film parts in "Balls of Fury," &"Piranha 3DD," to name a few. In 2016 Ms. Voronina returns to the big screen playing supporting roles in "Laser Team" and "Killing Hasselhoff." She is starring in the indie action flick "Scramble" which she also co-produced.

27.     Chicas misappropriated Ms. Voronina's Image and placed it on a social media post for Chicas, a sexually oriented business, beginning on or about October 28, 2017, for the club's, "Halloween Party." The image depicts Ms. Voronina in a pirate costume promoting the BYOB Halloween Party at the strip club. The image of Ms. Vornina was deliberately positioned on the promotional materials to imply that she was a stripper working at the club or that she endorsed the club and is attached here as Exhibit B.  The image was used without the permission of Ms. Voronina and is defamatory on its face.  The image was circulated via social media by Chicas.

28.     Jessica Burciaga is a model and a business owner from Orange County, CA. She is of Mexican, French, and Irish descent. Ms. Burciaga began modeling in 2005 when she submitted a few photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Ms. Burciaga's first photo shoot, she won *Stuff Magazine's* "Neighborhood Knockout" contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports *Fight Night Round* 3 video game. Ms. Burciaga's

popularity rose quickly and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine*, and many others. Ms. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series *The Girls Next Door*. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Ms. Burciaga's social media reach has hit 1,600,000 followers on Instagram, over 285,000 Facebook likes, and 203,000 followers on Twitter.

29.     Chicas misappropriated Ms. Burciaga's Image, and placed it on social media posts for Chicas, a sexually oriented business, beginning on or about May 11, 2015, for the club's, "Lunes de Latino." The advertisement portrays two models, both of which are Ms. Burciaga, promoting the event and the strip club. The images of Ms. Burciaga were deliberately positioned on the promotional materials to imply that she was a stripper working at the club or that she endorsed the club and is attached here as Exhibit C.  The images were used without the permission of Ms. Burciaga and are defamatory on their faces.  The images were circulated via social media by Chicas.

30.     Brooke Marrin (Brooke Banx) has been featured in countless magazines, calendars, posters, catalogs, and ad campaigns nationwide. She can also be seen in music videos, films and a few reality shows, as well as hosting numerous events around the world. Banx's rise within the ranks of the entertainment industry has landed her many great opportunities with features and pictorials in countless major websites and magazines, including FHM, www.savvy.com and a recent front cover of America Curves Magazine. Banx has also just finished her biology degree and is attending medical school. She has over 29 thousand followers

on Twitter, and over 186 thousand followers on Facebook

31.     Chicas misappropriated Ms. Banx's Image and placed it on socialmedia posts for Chicas, a sexually oriented business, beginning on or about February 26, 2020, for the club's "2020 Houston Rodeo." The Image depicts Ms. Banx in a white bikini and cowboy hat promoting the event and the strip club. The images of Ms. Banx were deliberately positioned on the promotional materials to imply that she was a stripper working at the club or that she endorsed the club and is attached here as Exhibit D.  The image was used without the permission of Ms. Banx and is defamatory on its face.  The image was circulated via social media by Chicas.

32.     Rosa Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a Bachelor in Art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she is nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 36 thousand Facebook followers, over 1.6 million Instagram followers, and over 291 thousand Twitter followers.

33.     Chicas misappropriated Ms. Acosta's Image and placed it on social media posts for Chicas, a sexually oriented business, beginning on or about June 6, 2020, for the club's,

"Chica's Cabaret South Grand Opening" The Image depeicits Ms. Acosta in a green bikini promoting the event and the strip club. The image of Ms. Acosta was deliberately positioned on the promotional materials to imply that she was a stripper working at the club or that she endorsed the club and is attached here as Exhibit E.  The image was used without the permission of Ms. Acosta and are defamatory on its face.  The image was circulated via social media by Chicas.

34.    All of the images posted in this case were re-published over the course of years on Chica's social media sites to substantially new audiences.  This was the result of Chica's failure to either promulgate or, alternatively, to enforce policies and procedures to ensure that its social media sites would comply with the law.  The conduct is ongoing and continuous and each publication of the images is separate and distinct tort producing separate and distinct harm.

35.    None of the Plaintiffs consented to Chicas's use of the images.  The Plaintiffs are all talented, highly successful models who earn substantial amounts of money by promoting and protecting their images and likenesses to various clients and take great pride in their reputation in their industry.  It is common knowledge that any improper or unauthorized use of their images or likenesses will substantially injure their careers.

36.    Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize earning potential, book modeling contracts, and establish each of their individual brands.  In furtherance of establishing, and maintaining their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they choose to model.

37.    Plaintiffs' Images were misappropriated, by the Defendant in order to make it appear that they worked at, promoted, or endorsed Chicas.

38.     In the case of each and every depiction featuring Plaintiffs' Images, such appearances were false.

39.     Moreover, in each and every case, this misappropriation occurred without any Plaintiffs' knowledge, consent, or authorization and at no point did Plaintiffs ever receive any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images has caused Plaintiffs to suffer substantial damages.

40.     That we know of, Plaintiffs were depicted in social media, website, and other Internet posts in order to promote Chicas.   These posts were intentionally designed to make it appear that Plaintiffs are either strippers working at Chicas, promoted Chicas, or endorsed the club.

41.     No Plaintiff has ever been employed at Chicas or any other sexually-oriented business and has never (and would never) agree to sign away her Image rights to be used in any way that affiliates her with Chicas.

42.     Plaintiffs have never been hired to endorse Chicas, have received no remuneration for Defendant's unauthorized use of their Images, and have suffered, and will continue to suffer, damages as a result of Defendant's use of their Images.

43.     In addition, each cause of action asserted in this lawsuit accrued in April of 2018, when Plaintiffs knew of the fact giving rise to the causes of action. The posting of these images was inherently undiscoverable and the evidence was objectively verifiable.  The Discovery Rule applies to all images in this matter.

### *Ownership of Images*

44.     All Plaintiffs have reviewed the imagery in question and have positively identified themselves as the models depicted in the doctored internet and social media posts used

by Defendant Clubs to market and promote the Clubs.  As described more specifically for each Plaintiff above, some of the photographs used to create the strip club advertisements were taken professionally and a release was signed at the time of the photo shoot.  However, no Plaintiff ever released her Right to Privacy, Publicity, or the right to any third party to sell her image to any third-party not a party to the original release without her permission.  No Plaintiff ever agreed to promote a strip club via the imagery taken by Chicas.

45.     Additionally, if any release was signed, it did not give any person rights to use the photographs into perpetuity.  The industry standard varies, but a model rarely, if ever, signs a release of all rights into perpetuity for the use of her image.  Moreover, if a release was signed, it did not include a release of the Plaintiffs' publicity rights and, in fact, several of the releases specifically stated that Plaintiffs retained their right to publicity.  The right to a person's image and likeness is not copyrightable and, therefore, Plaintiffs are not asserting copyright claims.

46.     Moreover, as described more specifically for each Plaintiff above, some of the photographs were taken as "selfies" and are therefore fully owned by the individual Plaintiff or they were taken for personal use in an individual Plaintiff's portfolio in order to allow her to market herself to new clients.  In these cases, no release was signed and no copyright interest was asserted.  In these cases, as above, each Plaintiff fully retained her right to publicity and privacy and in no case did any Plaintiff ever agree, nor did any third party hold the right to agree on her behalf, that Defendant could use her image and likeness in order to market, promote, or endorse their strip clubs.  Based on these rights, Plaintiffs assert the Causes of Action described below.

***Defendant's Business***

47.     Upon information and belief, CHICAS ENTERTAINMENT, LLC D/B/A

CHICAS CABARET operates a strip club under the name Chicas that engages in the business of selling alcohol and food in an atmosphere were nude and/or semi-nude women entertain the business' clientele.

48. CHICAS ENTERTAINMENT, LLC D/B/A CHICAS CABARET does this for its own commercial and financial benefit.

49. CHICAS ENTERTAINMENT, LLC D/B/A CHICAS CABARET has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that Plaintiffs either worked as strippers at Chicas, promoted Chicas, or endorsed Chicas.

50. CHICAS ENTERTAINMENT, LLC D/B/A CHICAS CABARET used Plaintiffs' Images and created the false impression that they worked at or endorsed Chicas in order to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

51. As Chicas was at all times aware, at no point have Plaintiffs ever been affiliated with or employed by Chicas, and at no point have Plaintiffs ever endorsed Chicas.

52. All of Chicas's activities, including its misappropriation of Plaintiffs' Images, and publication of them, were done without the knowledge or consent of Plaintiffs, and Chicas did not compensate Plaintiffs for its use of their Images.

53. As such, Plaintiffs have never received any benefit for Chicas's use of their Images.

***Standard Business Practices in the Modeling Industry***

54. It is common knowledge in the modeling industry that the hiring of a model for a

commercial purpose involves a particularized methodology and process.

55.     The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the Image are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned.  Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

56.     As detailed above, Defendant knowingly, and without the prior consent of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Chicas, by and through the use of internet posts, social media posts, and the creation and distribution of collateral materials such as flyers, posters, and cards.

57.     Defendant showcased Plaintiffs' Images on Chicas materials in order to create the false impression that Plaintiffs worked at Chicas, or endorsed the club.

58.     Defendant did so in order to attract clientele to Chicas, promote Chicas, and thereby generate revenue for Defendant.

59.     Defendant were aware that, by using Plaintiffs' Image, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Chicas.

60.     Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their reputation, character, and current career.  This is especially so insofar

as each of Plaintiffs' Images have been associated with a strip club, and the implication of Defendant's use of Plaintiffs' Images is that she is a stripper working in a sexually-oriented business.

61.    At no point was Plaintiffs ever affiliated with Chicas or Defendant.

62.    Plaintiffs' Images were used without their consent.

63.    At no point were Plaintiffs ever contacted by Defendant, or any representative of any of the Defendant, to request the use of Plaintiffs' Images.

64.    No Defendant ever obtained, either directly or indirectly, permission to use Plaintiffs' Images.

65.    No Defendant ever paid any Plaintiffs for use of their Images on any promotional materials, including Chicas billboards, social media, Internet, or other promotional materials.

66.    Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive the Plaintiffs of their right to determine the use their Images.

67.    Upon information and belief, Defendant have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

## FIRST CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.: False Endorsement)

68.     Plaintiffs hereby repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69.    The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendant, and protect Plaintiffs from the conduct described herein.

70.    Defendant used Plaintiffs' Image, *inter alia*, in order to create the false impression with the public that Plaintiffs either worked at Chicas as strippers, or endorsed the sexually-

oriented business.

71.     This was done to promote and attract clientele to Chicas, and thereby generate revenue for the Defendant.

72.     Thus, this was done in furtherance of Defendant's commercial benefit.

73.     Despite the fact that Defendant were at all times aware that the Plaintiffs neither worked at, nor endorsed, Chicas, Defendant nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Chicas.

74.     Defendant knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Chicas.

75.     Upon information and belief, Defendant's use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Chicas, and the goods and services provided by Chicas.

76.     Due to Defendant's unauthorized use of Plaintiffs' Images  in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial, but in all events, not less than seventy five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

### SECOND CAUSE OF ACTION
**(Violation of the Lanham Act, 15 U.S.C. § 1125(a): False Advertising)**

77.     Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.* applies to Defendant and protects Plaintiffs from the conduct described herein.  Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .".  15 U.S.C. §1125(a)(1)(B).

78.     Defendant used Plaintiffs' images, likenesses and/or identities as described herein

without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Chicas, endorsed Defendant's business and activities, and/or consented to or authorized Defendant to use their Images in order to advertise, promote, and market Defendant's business, Chicas, and/or Chicas's events and activities.

79.     Defendant's use of Plaintiffs' images, likenesses and/or identities to advertise, promote and market Defendant's business, Chicas, and/or Chicas's events and activities as described in this Complaint was false and misleading.

80.     Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identities as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or was otherwise affiliated with Chicas, endorsed Defendant's business, Chicas or Chicas's events or activities, or consented to or authorized Defendant's usage of her image in order to advertise, promote, and market Defendant business or Chicas's events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

81.     Defendant's false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Chicas, as to the general quality of attendees and participants of Chicas and in its events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Chicas, endorsed Defendant's business, Chicas or Chicas's events or activities, or consented to or authorized Defendant's usage of their images in order to advertise, promote, and market Defendant's business or Chicas's events and activities.

82.     Upon information and belief, Defendant's false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs worked at or were otherwise affiliated with Chicas, endorsed Defendant's business, Chicas or Chicas's events and

activities, or consented to or authorized Defendant's usage of their Images in order to advertise, promote, and market Defendant's business or Chicas's events and activities.

83.     Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to join Chicas, visit Chicas, and participate in events at Chicas and had a material effect and impact on the decision of members and prospective members and participants to join Chicas, visit Chicas and take part in the events at Chicas.

84.     Defendant's advertisements, promotions and marketing of Chicas and events at Chicas occur in and are targeted to interstate commerce.  Specifically, Defendant promotes its business and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendant principally uses the World Wide Web, social media, and other vehicles of interstate commerce to advertise, market, promote, and entice or lure membership and attendance at Chicas events.

85.     Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identities as described herein was designed to benefit Defendant's business interests by, among other things, promoting Chicas and its activities and attracting clientele to Chicas.

86.     Defendant knew or should have known that its unauthorized use of Plaintiffs' images, likenesses and/or identities would cause consumer confusion as described in this Complaint.

87.     Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identities as described herein violates 15 U.S.C. §1125(a) and was wrongful.

88.     Defendant's wrongful conduct as described herein was willful.

89.     As such, the present case is an exceptional case warranting an award of

reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

90.     Defendant had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

91.     The method and manner in which Defendant used the Images of Plaintiffs further evinces that Defendant were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendant's use of their Images to advertise Defendant's business.

92.     Defendant has caused irreparable harm to Plaintiffs, their reputations and brands by attributing to Plaintiffs the strip club lifestyle and activities at Chicas.

93.     Defendant's unauthorized use of Plaintiffs' images, likenesses and/or identities directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

94.     Plaintiffs respectfully request that the Court issue a judgment granting actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### THIRD CAUSE OF ACTION
**(Violation of Texas Right to Privacy)**

95.     Plaintiffs hereby repeat and re-allege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

96.     All Plaintiffs have reviewed the imagery in question and have positively identified themselves as the models depicted in the doctored Internet and social media posts used by Defendant to market and promote Chicas.  As described more specifically for each Plaintiff

above, some of the photographs used to create the strip club advertisements were taken professionally and a release was signed at the time of the photo shoot.  However, no Plaintiff ever released her Right to Privacy, Publicity, or the right to any third party to sell her image to any third-party not a party to the original release without her permission, especially a strip club.

97.     Moreover, if a release was signed, it did not include a release of the Plaintiffs' publicity rights and, in fact, several of the releases specifically stated that Plaintiffs retained their rights to publicity.   The right to a person's image and likeness is not copyrightable and, therefore, Plaintiffs are not asserting copyright claims.

98.     Moreover, as described more specifically for each Plaintiff above, some of the photographs were taken as "selfies" and are therefore fully owned by the individual Plaintiff or they were taken for personal use in an individual Plaintiff's portfolio in order to allow her to market herself to new clients.  In these cases, no release was signed and no copyright interest was asserted.  In these cases, as above, each Plaintiff fully retained her right to publicity and privacy and in no case did any Plaintiff ever agree, nor did any third party hold the right to agree on her behalf, that Defendant could use her image and likeness in order to market, promote, or endorse its strip club.  Based on these rights, Plaintiffs assert the Causes of Action described below.

99.     As set forth herein, Defendant have violated by invading Plaintiffs' privacy, misappropriating their likenesses, and publishing on Chicas materials the altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at Chicas, or endorsed the strip club.   Defendant misappropriated the Plaintiffs' Images for the value associated with them and for their own benefit.  All of the images misappropriated by Defendant were republished many times in different formats to substantially different audiences on many occasions.  Each

publication is a new violation of Plaintiffs' rights.   The appropriation was neither incidental nor for a newsworthy purpose; rather, the images were misappropriated by Defendant, or third parties acting on their behalf, for their own benefit because of the commercial standing, reputation, and other values associated with the Plaintiffs' Images.

100.   At all relevant times, Chicas internet, social media, and collateral materials were used by Defendant for advertising and trade purposes.

101.   Chicas internet, social media, and collateral materials were designed to attract business to Chicas and generate revenue for Defendant.

102.   Upon information and belief, Defendant's use of Plaintiffs' Images did in fact attract clientele and generate business for Chicas.

103.   At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Images on Chicas internet, social media, and collateral materials were or anywhere else.

104.   Defendant were at all relevant times aware that they never received any Plaintiffs permission or consent to use their Images on any website or social media account, or on any other medium in order to promote Chicas.

105.   At no point did Defendant ever compensate Plaintiffs for its use of their Images.

106.   No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

107.   Due to Defendant's violation of Plaintiffs' rights of privacy and publicity under IRPA, Plaintiffs has been damaged in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), exclusive of punitive and exemplary damages.

108.     In addition, Plaintiffs hereby requests an Order permanently enjoining Defendant from violating Plaintiffs' right to privacy and publicity.

109.     In addition, Plaintiffs hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendant knowing and intentional violation of her statutory rights to privacy and publicity.

## FOURTH CAUSE OF ACTION
### (Defamation)

110.     Plaintiffs hereby repeat and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

111.     As detailed throughout this Complaint, Defendant has published altered Images of Plaintiffs in order to promote Chicas to the general public and potential clientele.

112.     Defendant's publication of said Image constitutes a representation that Plaintiffs were either employed at Chicas, endorsed Chicas, or that she had some affiliation with Chicas.

113.     None of these representations were true.

114.     In publishing Plaintiffs' altered Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs were a stripper working at Chicas or endorsed the strip club.

115.     Defendant were at least negligent in publishing Plaintiffs' Images because it knew, or should have known, that Plaintiffs were not employed by Chicas, had no affiliation with Chicas, had not consented to the use of her Image, and had not been compensated for the use of her Image.

116.     In the alternative, Defendant published the Image of Plaintiffs with actual malice because it knew that Plaintiffs were not employed by Chicas, had no affiliation with Chicas, had not consented to the use of her Image, and had not been compensated for the use of her Image.

- 22 -

117.     Despite Defendant's knowledge and awareness of these facts, it nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for itself.

118.     Defendant's publication of Plaintiffs' Images   constitutes defamation under Illinois law because said publication falsely accuses Plaintiffs of having acted in a manner – *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiffs to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiffs of confidence and friendly intercourse in society.

119.     Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under Texas law because said publication would tend to injure each Plaintiffs in her trade, business, and profession.

120.     This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendant's publication of the Image support.

121.     Defendant's publication of Plaintiffs' Images likewise constitutes defamation *per se* under Illinois law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to them.

122.     Defendant's publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial, but in all events in an amount not less than seventy five thousand ($75,000), exclusive of punitive and exemplary damages.

### FIFTH CAUSE OF ACTION
**(Negligence and *Respondeat Superior*)**

123.     Plaintiffs hereby repeat and re-allege each and every allegation set forth in the

- 23 -

preceding paragraphs as if fully set forth herein.

124.    Upon information and belief, Defendants were negligent in their failure to promulgate policies and procedures concerning the misappropriation of the Images of Plaintiffs that were used on their websites and social media accounts.

125.    Said failure was the proximate cause of the harm Plaintiffs suffered when their Images were published without their authorization.

126.    In the alternative, and upon information and belief, although Defendants promulgated policies and procedures concerning the misappropriation of images, Defendants nevertheless negligently failed to enforce those policies, communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Texas law, were not violated.

127.    The publication of the Plaintiffs' images was ongoing.  Defendants failed to relinquish all right of control, title, and interest in their advertisements.  The images of Plaintiffs were published and reutilized on the Defendants' social media and internet accounts for years (and indeed to the present day) after the original publication. In other words, these images were published and re-published by Defendants continually for years and have not been removed as of the filing of this lawsuit.

128.    All of these posts contain new comments or hashtags and were reposted on the particular dates in question.  The images of Plaintiffs were altered and re-posted with new content.  Each re-publication establishes a new statute of limitations for that image.

129.    All of the posts contain multiple "Likes," which, by definition, evidence the fact that each time an image was posted or reposted by Defendant, a substantially new audience was exposed to the image.  This precludes the application of the Single Publication Rule in that this

case is about multiple publications of Plaintiffs' images and not one use that can simply be accessed by persons visiting the social media cites.

130.    Each new publication of Plaintiffs' images by Defendant constitutes a separate publication.  Each republication is a separate act of negligence that causes a continuing injury to Plaintiffs.  Each publication constitutes a continuous tort.  To date, Defendant continues to maintain the imagery of the Plaintiffs on its social media accounts.  Defendants have engaged and continue to engage in continued injury-producing conduct.

131.    In addition, Defendants had a duty to refrain from appropriating the Image of those with whom it had not contracted and had not paid.

132.    Defendants violated said duty by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

133.    As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial, but which in all events are in excess of seventy-five thousand dollars ($75,000), exclusive of punitive and exemplary damages.

**ATTORNEYS' FEES PURSUANT TO TEX. CIV. PRAC. & REM CODE § 38.001**

134.    Plaintiffs are professional models who earn a living by lending their images to businesses who seek to use those images to sell a product or service.  Those clients bargain with Plaintiffs for the use of the image in exchange for remuneration.

135.    In this case, Defendants, in essence, contracted with the Plaintiffs for the extended use of their images to promote or endorse their businesses.  Plaintiffs have essentially been forced to perform labor for Defendants against their will and the use of their images in Defendants' social media post constitutes services rendered by Plaintiffs to Defendants.

136.    In addition to the other damages sustained by Plaintiffs, Plaintiffs are entitled to recover reasonable attorney's fees, in addition to the amount of their damages and costs pursuant to Tex. Civ. Prac. & Rem. Code § 38.001(1) and § 38.001(2) and seek those amounts in this lawsuit.

## DEMAND FOR JURY TRIAL

137.    Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, but in all events not less than seventy-five thousand dollars ($75,000.00), relating to Plaintiffs' first through fifth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: Austin, Texas
      January 28, 2021

Respectfully submitted,

*/s/Dennis C. Postiglione*

Dennis C. Postiglione
State Bar No. 24041711
**The Casas Law Firm, P.C.**
3801 North Capital of Texas Highway,
Suite E240, #445
Austin, Texas 78746
(512) 806-7699 Office
(855) 220-9626 Fax
dennis@talentrights.law

**ATTORNEYS FOR PLAINTIFFS**